## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HENRIMAE PRICE, | ) | |
| QUIANNA CRANE, | ) | |
| MIKKITA DEAN, | ) | |
| REGINA MAYO, | ) | |
| IDELLA GREEN, | ) | |
| SONOVIA JACKSON, | ) | |
| ALEXIS MALONE, | ) | CIVIL ACTION NO: |
| STELLA OKONOBO, | ) | |
| BRITTANY REESE, | ) | |
| CORNELIA ZIAMA, | ) | |
| CHAUNTEVIA FLOWERS, | ) | |
| | ) | |
| **PLAINTIFFS**, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGIA DEPARTMENT OF | ) | |
| HUMAN SERVICES, DIVISION | ) | |
| of FAMILY AND CHILDREN | ) | |
| SERVICES, and CANDICE L. | ) | |
| BROCE, in her official and | ) | |
| individual capacity | ) | |
| | ) | |
| **DEFENDANTS**. | ) | |

## <u>COMPLAINT</u>

**COME NOW** Henrimae Price, Quianna Crane, Mikkita Dean, Regina

Mayo, Idella Green, Sonovia Jackson, Alexis Malone, Stella Okonobo, Brittany

Reese, Cornelia Ziama, and Chauntevia Flowers (hereinafter "Plaintiffs"), and file

this, their Complaint against the Georgia Department of Human Services, Division of Family and Children Services ("Defendant" or "DHS-DFCS") and Candice L. Broce ("Broce") (collectively referred to as "Defendants"), showing the Court as follows:

## STATEMENT OF THE CLAIM

### 1.

This action to correct unlawful employment practices by Defendants arises under 42 U.S.C.A. Section 2000e *et seq.* Title VII of the Civil Rights Act of 1964 ("Title VII") and the U.S. Constitution. Plaintiffs allege that DHS-DFCS terminated their employment because Plaintiffs complained of being subjected to racially hostile and abusive working conditions. When Plaintiffs organized in protest of the hostile working environment, Defendant DHS-DFS retaliated against Plaintiffs by suspending them and then terminating their employment in violation of their rights under Title VII. Moreover, DHS-DFS and Broce violated Plaintiffs' rights to freedom of speech, freedom of association and equal protection, pursuant to the 1st and 14th Amendments of the U.S. Constitution. As such, Plaintiffs seek to vindicate a violation their constitutional rights by bringing claims against DHS-DFS and Broce through 42 U.S.C. §1983. Plaintiffs seek economic damages, including lost wages, privileges and benefits; noneconomic

compensatory damages for emotional distress, humiliation, embarrassment, and mental anguish; and attorneys' fees and costs of litigation for a violation of their rights under Title VII and the U.S. Constitution.

## **THE PARTIES**

### **PLAINTIFFS**

2.

Plaintiff Henrimae Price is an African American female resident of Georgia. Ms. Price became employed with DHS-DFCS on April 1, 2021, as a social services administrator.  Ms. Price supervised five social services supervisors.  During all times of the events alleged in this Complaint, Price was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

3.

Plaintiff Quianna Crane is an African American female resident of Georgia. Ms. Crane became employed with DHS-DFCS on November 1, 2019, as a social services specialist-2.  Ms. Crane's role was to provide assistance and responses to alleged child maltreatment and to identify and address child safety concerns. During all times of the events alleged in this Complaint, Ms. Crane was employed

with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

4.

Plaintiff Mikkita Dean is an African American female resident of Georgia. Ms. Dean became employed with DHS-DFCS on August 1, 2014, as a social services specialist, and on March 16, 2021, she was promoted to the position of social services administrator.  Ms. Dean's role was to administer and maintain the operation of the Child Welfare Services programs.  During all times of the events alleged in this Complaint, Ms. Dean was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

5.

Plaintiff Idella Green is an African American female resident of Georgia. Ms. Green became employed with DHF-DFCS on April 16, 2019, as a social services specialist-2.  Ms. Green's role was to provide assistance and responses to alleged child maltreatment and to identify and address child safety concerns. During all times of the events alleged in this Complaint, Ms. Green was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

6.

Plaintiff Sonovia Jackson is an African American female resident of Georgia. Ms. Jackson became employed with DFCS on March 2, 2020, as a social services specialist-2. Ms. Jackson's role was to provide assistance and responses to alleged child maltreatment and to identify and address child safety concerns. During all times of the events alleged in this Complaint, Ms. Jackson was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

7.

Plaintiff Alexis Malone is an African American female resident of Georgia. Ms. Malone became employed with DFCS on November 1, 2021, as a social services specialist-2. Ms. Malone's role was to identify placement resources for children within the foster care system, initiate the legal process for guardianship, provide protective services, and make assessments regarding child safety. During all times of the events alleged in this Complaint, Ms. Malone was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

8.

Plaintiff Regina Mayo is an African American female resident of Georgia. Ms. Mayo became employed with DHS-DFCS on December 16, 2020, as a social services specialist-3, and on September 16, 2021, she was promoted to the position of social services specialist supervisor.  Ms. Mayo's role was to identify placement resources for children in the foster care system, initiate the legal process for guardianship, provide protective services, and make immediate assessments regarding child safety.  During all times of the events alleged in this Complaint, Ms. Mayo was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

9.

Plaintiff Stella Okonobo is a native African female resident of Georgia.  Ms. Okonobo became employed with DHF-DFCS on July 16, 2016, as a social services specialist-2.  Ms. Okonobo's role was to provide assistance and responses to alleged child maltreatment and to identify and address child safety concerns. During all times of the events alleged in this Complaint, Ms. Okonobo was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

10.

Plaintiff Brittany Reese is an African American female resident of Georgia. Ms. Reese became employed with DHF-DFCS on April 1, 2020, as a social services specialist-2. Ms. Reese's role was to provide assistance and responses to alleged child maltreatment and to identify and address child safety concerns. During all times of the events alleged in this Complaint, Ms. Reese was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

11.

Plaintiff Cornelia Ziama is a native African female resident of Georgia. Ms. Ziama became employed with DHF-DFCS on April 16, 2010, as a social services specialist-3. Ms. Ziama's role was to take immediate action concerning at-risk children in need of protective services, initiate assistance and responses to alleged child maltreatment, and assess child safety concerns. During all times of the events alleged in this Complaint, Ms. Ziama was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

12.

Plaintiff Chauntavia Flowers is an African American female resident of Georgia.  Ms. Flowers became employed with DHS-DFCS on November 1, 2019, as a social services specialist supervisor.  Ms. Flowers' role was to identify placement resources for children within the foster care system, initiate the legal process for guardianship, provide protective services, make immediate assessments regarding child maltreatment, and identify and address child safety.  During all times of the events alleged in this Complaint, Ms. Flowers was employed with Defendant's Fulton County DFCS office, 5710 Stonewall Tell Road, College Park, Fulton County, GA 30349.

## DEFENDANT

13.

Defendant Georgia Department of Human Services ("DHS") is an agency of the state of Georgia.  DHS is a covered entity under Title VII.  DHS is engaged in an industry affecting commerce and has had more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.  The Division of Family and Children Services ("DFCS") is a department within DHS that administers and supervises foster care and adoption

services within Georgia. DHS acts as an agent of the federal government in the administration of its public child welfare program and is required to comply with all requirements for receipt of federal grants relating to public child welfare programs. DHS and DFCS (collectively "DHS-DFCS") oversee the administration and assessment of social services to dependent and neglected children in need of protective services.

14.

Defendant Candice Broce is the Director of DHS-DFCS.

## SUBJECT MATTER JURISDICTION

15.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. Sections 1331 and 1343.

## VENUE

16.

Venue is proper in this district and division under 28 U.S.C.A. Section 1391(b)(1)-(2), as the events or omissions giving rise to this claim occurred in this judicial district and division.

## PERSONAL JURISDICTION

17.

Defendants may be served with process by delivering a copy of this Complaint and Summons to its chief executive officer: Director Candice L. Broce, Department of Human Services, 47 Trinity Avenue S.W., Atlanta, GA 30334.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

18.

Plaintiff Henrimae Price filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") Atlanta District Office, Charge No. 410-2022-05371, on November 5, 2022.  A copy is attached as Exhibit A.  Plaintiff subsequently received a Notice of Right to Sue from the EEOC on December 5, 2023.  A copy is attached as Exhibit A-1.

19.

Plaintiff Quianna Crane filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07781, on November 9, 2022.  A copy is attached as Exhibit B.  Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 22, 2023.  A copy is attached as Exhibit B-1.

20.

Plaintiff Mikkita Dean filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07915, on November 9, 2022.  A copy is attached as Exhibit C.  Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 22, 2023.  A copy is attached as Exhibit C-1.

21.

Plaintiff Idella Green filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07917, on November 9, 2022.  A copy is attached as Exhibit D.  Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 22, 2023.  A copy is attached as Exhibit D-1.

22.

Plaintiff Chauntevia Flowers filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07916, on November 9, 2022.  A copy is attached as Exhibit E.  Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 22, 2023.  A copy is attached as Exhibit E-1

23.

Plaintiff Stella Okonobo filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07919, on November 9, 2022. A copy is attached as Exhibit F. Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 22, 2023. A copy is attached as Exhibit F-1.

24.

Plaintiff Sonovia Jackson filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07918, on November 9, 2022. A copy is attached as Exhibit G. Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 22, 2023. A copy is attached as Exhibit G-1.

25.

Plaintiff Alexis Malone filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07894, on November 9, 2022. A copy is attached as Exhibit H. Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 25, 2023. A copy is attached as Exhibit H-1.

26.

Plaintiff Regina Mayo filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07936, on November 9, 2022. A copy is attached as Exhibit I. Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 25, 2023. A copy is attached as Exhibit I-1.

27.

Plaintiff Brittany Reese filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07935, on November 9, 2022. A copy is attached as Exhibit J. Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 25, 2023. A copy is attached as Exhibit J-1

28.

Plaintiff Cornelia Ziama filed a charge of discrimination against Defendant with the EEOC Atlanta District Office, Charge No. 410-2023-07913, on November 9, 2022. A copy is attached as Exhibit K. Plaintiff subsequently received a Notice of Right to Sue from the EEOC on September 25, 2023. A copy is attached as Exhibit K-1

## FACTUAL ALLEGATIONS

### 29.

Plaintiffs were primarily responsible for making assessments, providing services, and identifying safety concerns of children in the foster care system who were in need of protective services.

### 30.

The DHS-DFCS location where Plaintiffs were assigned to work predominately served African American children in need of services.

### 31.

Plaintiffs were routinely tasked with managing dangerously large foster care children caseloads.

### 32.

The Child Welfare League of America recommends caseloads of 12 to 15 children per social worker. The National Association of Social Workers' Council on Accreditation recommends that caseloads not exceed 18 per worker.

### 33.

Plaintiffs routinely were required to handle over 50 cases each.

34.

From February 2022 until May 2022, Plaintiffs voiced their concerns to Defendant's leadership team concerning the large caseloads they were required to handle.

35.

From February 2022 until May 2022, Plaintiffs complained to Defendant's leadership team that Defendant required them to circumvent comprehensive assessments and services that were necessary to adequately perform their jobs in order to maintain their caseloads.

36.

From February 2022 until May 2022, Plaintiffs complained to Defendant's leadership team that Defendant required them to provide services to children that did not comply with established social work ethical standards.

37.

From February 2022 until May 2022, Plaintiffs complained to Defendant's leadership team that they were not allowed to conduct follow-up assessments of compromised children due to the enormous caseloads.

38.

Before and during the time of Plaintiffs' complaints to leadership, Defendant relocated unplaced foster care children into the Stonewall Tell office building where Plaintiffs worked.

39.

The process of housing the children in the Stonewall Tell office building was known as "office hoteling."

40.

Plaintiffs complained to Defendant's leadership team that there were problems with the office hoteling of foster care children in the office building.

41.

Specifically, Plaintiffs complained that the children were subjected to dangerous conditions and were sleeping on floors, mats, and cots in the office building.  Plaintiffs also complained that there was fighting in the building, destruction of office documents, poor supervision, and lack of adequate meals for the children.

42.

Plaintiffs complained that nearly 100 phone calls had been made to local law enforcement for help with problems of fighting, disruption, and illegal activities in

the office building that emerged during the office hoteling.  Defendant was aware of the repeated calls to law enforcement concerning lawlessness in the office building.

43.

Plaintiff Price had a private discussion with a member of Defendant's leadership team concerning the large caseloads and office hoteling.  That member of leadership informed Plaintiff Price that the Cherokee County DFCS office, which consisted of predominately white social workers, experienced similar caseload problems, and when Cherokee County social workers complained, leadership addressed Cherokee County's concerns and paid them higher salaries.

44.

Plaintiffs decided to organize among themselves to file a lawsuit over what they were told about pay and workload disparities between the Black Fulton County DFCS social workers and the White Cherokee County DFCS social workers.

45.

On May 12, 2022, several Plaintiffs were absent from work.  Some were sick, and others were absent on medical and/or Family and Medical Leave Act ("FMLA") leave that had been preapproved prior to May 12, 2022.

46.

On May 12, 2022, Defendant suspended all Plaintiffs without pay pending an investigation concerning the reasons for their absences from work.

47.

The following week, DHS-DFCS engaged the Georgia Office of the Inspector General ("OIG") to conduct an investigation concerning several Plaintiffs' absences from work on May 12, 2022.

48.

OIG interviewed five of the 11 Plaintiffs. During its investigation, OIG was informed by one or more of the Plaintiffs that Plaintiffs were planning to file a lawsuit alleging employment discrimination.

49.

During its investigation, OIG was informed by one or more of the Plaintiffs that Plaintiffs were planning to unionize by forming a collective bargaining unit.

50.

During its investigation, OIG was informed by one or more of the Plaintiffs that Plaintiffs planned to wear black clothing to meetings as a sign of solidarity of their cause to correct pay disparities, office hoteling, and inadequate care for foster care children.

51.

Plaintiffs discussed unionization during various periods of time that they were employed by Defendants.

52.

Plaintiffs also discussed, during various periods of time they were employed by Defendants, wearing black clothing as a show of solidarity concerning their desire to form or associate with a union.

53.

Plaintiffs were not allowed to speak about unionization at work and wear certain types of clothing without being penalized by suspension and termination. Defendants did not censor other types of speech and clothing in the workplace.

54.

As employees of a Department of the State of Georgia, Plaintiffs have a clearly established right to freedom of speech, freedom of association pursuant to the 1st Amendment to the U.S. Constitution, as well as equal protection under the law pursuant to the 14th Amendment.

55.

Plaintiffs' right to freedom of speech, as employees of the government, is a clearly established constitutional right of which a reasonable person would have known.

56.

Plaintiffs' right to freedom of association as employees of the government, is a clearly established constitutional right of which a reasonable person would have known.

57.

Plaintiffs' right to equal protection under the law as employees of the government, is a clearly established constitutional right of which a reasonable person would have known.

58.

Plaintiffs were deprived of these federal rights by persons acting under color of state law, namely Broce and DHS-DFCS, when Plaintiffs were suspended and then terminated from their employment after exercising these rights.

59.

On May 20, 2022, Defendant fired all Plaintiffs, regardless of whether they had been at work on May 12, 2022, or whether they had been on preapproved medical or FMLA leave on May 12, 2022.

60.

Defendant was aware that the conditions in the workplace were unsafe, abusive, and permeated with discriminatory intimidation.  However, Defendant did not engage in discussions with Plaintiffs regarding their complaints about the unsafe and abusive conditions under which Defendant required that Plaintiffs perform work.

61.

Defendant did not ascertain whether Plaintiffs were present at work on May 12, 2022, or whether Plaintiffs were on preapproved medical or FMLA leave prior to firing all Plaintiffs, which plausibly implies that Defendant's actions were pretext for discrimination based on Plaintiffs' plan to file a lawsuit against Defendant.

62.

Defendant violated Plaintiffs' rights under Title VII, first by failing to take

prompt and immediate remedial action to address the abusive workplace, then by firing Plaintiffs due to their plans to file a lawsuit and form a union.

63.

Defendant's failure to conduct a complete investigation of Plaintiffs' complaints of discrimination and to inform Plaintiffs of their right to oppose unlawful employment actions in the workplace left Plaintiffs exposed to abusive conditions on a daily basis, culminating in termination.

64.

Defendants failed to take any action whatsoever regarding more than 100 calls made to law enforcement regarding the lawless and unsafe conditions of the DHS-DFCS building where Plaintiffs worked.

65.

Defendant's violations of Plaintiffs' rights under Title VII have deprived Plaintiffs of income. The loss of their jobs also caused Plaintiffs to suffer noneconomic compensatory damages under Title VII, including mental anguish and emotional distress.

## COUNT I
### (Against DHS-DFCS)

**(Race-Based Hostile Work Environment in Violation of Title VII)**

66.

Plaintiffs incorporate by reference paragraphs 1-56 of this Complaint as though set forth fully and separately herein.

67.

Defendant is an employer within the meaning of Title VII.

68.

Plaintiffs, at all times relevant to this Complaint, were employed by Defendant on a full-time basis at its Fulton County DFCS office, located at 5710 Stonewall Tell Rd., Fulton County, College Park, GA 30349.

69.

Plaintiffs are all African or African American females.

70.

Plaintiffs were victims of a racially hostile working environment that was sufficiently severe or pervasive to alter the terms and conditions of their employment.

71.

Defendant created the racially hostile environment by subjecting Plaintiffs to

abusive work conditions that Defendant caused Plaintiffs by their failure to address and promptly remedy with corrective measures.

72.

This racially hostile work environment was unwelcome and was allowed to persist because of Plaintiffs' African or African American race, as other non-African American social workers who worked for Defendant were not subjected to such a persistently hostile and abusive work environment.

73.

Defendant is vicariously liable for the hostile work environment that Plaintiffs experienced that supervisors allowed to be created and persist because Defendant failed to adequately investigate Plaintiffs' complaints and failed to take prompt remedial action.

**COUNT II**

**(Against DHS-DFCS)**

**(Retaliatory Mistreatment in Violation of Title VII)**

74.

Plaintiffs incorporate by reference paragraphs 1-66 hereinabove as though set forth fully and separately herein.

75.

Defendant violated Title VII because it mistreated Plaintiffs in retaliation for engaging in the protected activity of opposing unlawful employment practices (i.e., subjecting Plaintiffs to a hostile work environment) that they reasonably believed was in violation of Title VII.

76.

Defendant's mistreatment of Plaintiffs well might have dissuaded a reasonable worker from making or supporting a charge of discrimination or opposing discriminatory practices in the workplace.

77.

Plaintiffs engaged in protected activity under Title VII on numerous occasions throughout their employment by complaining about a hostile work environment that they were being subjected to.

78.

In response to the complaints on or about May 12, 2023, Plaintiffs were suspended by Defendant pending an investigation, which was inadequately performed.  Accordingly, Plaintiffs were mistreated in this regard.

**COUNT III**

**(Against DHS-DFCS)**

**(Retaliation in violation of Title VII)**

79.

Plaintiffs incorporate by reference paragraphs 1-69of this Complaint as though set forth fully and separately herein.

80.

Plaintiffs were engaged in statutorily protected activity when they opposed a discriminatory practice before and during the DHS-DFCS investigation interviews with the OIG.

81.

Plaintiffs were terminated from their employment because of their opposition to a racially hostile environment and for verbalizing their federally protected rights.

## COUNT IV

**(Against DHS-DFCS)**

**(Termination in Violation of Title VII)**

82.

Plaintiffs incorporate by reference paragraphs 1-74 hereinabove as though set forth fully and separately herein.

83.

Defendant violated Title VII by discharging Plaintiffs because of their race and/or national origin.

84.

Upon information and belief similarly situated non-African American individuals working for Defendant's Cherokee County office were not terminated for engaging in the conduct Plaintiffs are alleged to have engaged in.

## COUNT V

### (Against DHS-DFCS and Broce)

### (Section 1983: Retaliation for Exercising First Amendment Rights)

85.

Plaintiffs incorporate by reference paragraphs 1-84 hereinabove as though set forth fully and separately herein.

86.

The First Amendment to the U.S. Constitution guarantees all citizens the right to freedom of speech. This protection extends to public employees working for a state governmental agency.

87.

Plaintiffs, as public employees, worked for Defendant, a state governmental

agency. Accordingly, as government employees, Plaintiffs have protections concerning rights to free speech.

88.

Plaintiffs' First Amendment rights include the right to engage in discussion regarding labor unions without the fear of reprisal or censorship by their employer.

89.

Upon learning about Plaintiffs' discussions concerning union formation or association, Defendants terminated Plaintiffs' employment, in violation of the First Amendment of the U.S. Constitution that protects the right of public employees to associate, speak, and petition freely without the government retaliating against individuals for exercising their First Amendment rights.

## COUNT VI

**(Against DHS-DFCS and Broce)**

**(Section 1983: Interference with Freedom of Association Rights Under the First Amendment)**

90.

Plaintiffs incorporate by reference paragraphs 1-89 hereinabove as though set forth fully and separately herein.

91.

Freedom of association protection extends to membership in various organizations such as labor unions.

92.

As public employees, Plaintiffs had an interest in exercising their rights of free speech and free association, and they exercised said rights.

93.

The exercise of these rights did not interfere with Defendants' interests; accordingly, Defendants violated Plaintiffs' freedom of association rights when it terminated Plaintiffs' employment.

## <u>COUNT VII</u>

**(Against DHS-DFCS and Broce)**

**(Section 1983: Violation of Rights to Equal Protection under the Law Pursuant to the 14th Amendment)**

94.

Plaintiffs incorporate by reference paragraphs 1-93 hereinabove as though set forth fully and separately herein.

95.

When the government penalizes the speech of some but not others, Equal Protection Interests under the 14th Amendment to the U.S. Constitution are implicated.

96.

The government cannot grant use of a forum to people whose views it finds acceptable but deny or penalize those who use the same forum to express less favored or controversial views.

97.

By penalizing Plaintiffs through suspension and then the termination of their employment, Defendants prohibited Plaintiffs from discussing union organizing at work or wearing certain color clothing while allowing other employees to discuss other matters at work and wear certain color clothing. Accordingly, Defendants violated Plaintiffs' rights to Equal Protection pursuant to the 14th Amendment.

## JURY TRIAL DEMAND

98.

Plaintiffs request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the above-stated claims that DHS-DFCS has violated Plaintiffs' rights afforded to them under Title VII and DHS-DFCS and

Broce have violated Plaintiffs rights under the U.S. Constitution, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to compensation for emotional distress, embarrassment, mental anguish, and inconvenience;

B. Back pay and lost benefits;

C. Actual losses;

D. Attorneys' fees and the costs of this action;

E.   Punitive damages concerning Broce in her individual capacity;

F.   Prejudgment and post-judgment interest at the highest lawful rate; and

G.   Such further relief as the Court deems just and proper.

Respectfully submitted this 20th  day of December 2023.

**HKM EMPLOYMENT ATTORNEYS, LLP**

_s/ Rita Cherry_
Rita Cherry
GA Bar No: 123398
3344 Peachtree Rd. NE
Suite 800, Office No. #35
Atlanta, GA 30326
Direct: 404-383-1213
rcherry@hkm.com


_s/ Jermaine A. Walker_
Jermaine "Jay" A. Walker

GA Bar No: 142044
3344 Peachtree Rd. NE
Suite 800, Office No. #35
Atlanta, GA 30326
Direct: 404-301-4020
jwalker@hkm.com